1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                       EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| ANTOINETTE ADKINS, | ) 1:09-cv-2031 SKO |
| | ) |
| | ) **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) **SOCIAL SECURITY COMPLAINT** |
| | ) |
| v. | ) (Doc. 1) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

18

19                             **BACKGROUND**

20         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the

21  "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB")

22  and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act.

23  42 U.S.C. §§ 405(g), 1383(c)(3).  The matter is currently before the Court on the parties' briefs,

24  which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States

25  Magistrate Judge.[1]

26

27         [1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 9, 11.)  On April 7,
    2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes.  *See* 28 U.S.C. § 636(c); Fed. R. Civ.
28  P. 73; *see also* L.R. 301, 305.

1

**FACTUAL BACKGROUND**

2      Plaintiff was born in 1949, completed high school, and previously worked as a child care

3   provider. (Administrative Record ("AR") 243, 257, 262.) Plaintiff stopped working in 2002 because

4   she "couldn't do it any more." (AR 127, 256.) On July 15, 2003, Plaintiff filed applications for DIB

5   and SSI, alleging disability beginning on April 29, 2003, due to renal rickets, arthritis, and

6   osteoporosis. (AR 32, 243-46, 256.)

7   **A.      Medical Evidence**

8           **1.      State Agency Physicians**

9       On July 13, 2004, James B. Peery, M.D., a state agency physician, assessed Plaintiff's

10   physical residual functional capacity ("RFC").[2] Dr. Peery opined that Plaintiff could (1) occasionally

11   lift and/or carry 50 pounds and frequently 25 pounds; (2) stand and/or walk for a total of about six

12   hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform

13   unlimited pushing and/or pulling with the upper extremities. (AR 353.)  Plaintiff had no postural,

14   manipulative, visual, communicative, or environmental limitations. (AR 354-56.)   Therefore,

15   Plaintiff was able to perform her past relevant work as a day care worker. (AR 30, 360.)  On

16   November 13, 2004, another state agency physician, James V. Glaser, M.D., affirmed Dr. Peery's

17   assessment. (AR 359.)

18          **2.      Gilbert Sunio, M.D.**

19       On May 29, 2004, Dr. Sunio, a board-certified internist, performed a consultative

20   examination of Plaintiff. (AR 347-51.) Plaintiff's chief complaints were osteoarthritis, osteoporosis,

21   rickets, and low back and joint pain. (AR 347.) Plaintiff reported that she could do housework very

22   slowly and drive for short distances, but could not stand very long or walk very far because of pain.

23

24      [2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in
a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.
25   Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from
an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's
26   RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and
'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"
27   *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

28                                    2

1  (AR 348.) Dr. Sunio noted that Plaintiff was able to walk to the examination room and get on and

2  off the examination table without assistance. (AR 348.) Her gait was normal but slow, and she used

3  a cane to ambulate. (AR 349.) Plaintiff was 59 inches tall, weighed 279 pounds, and had tenderness

4  in the lumbar spine area and minimal tenderness and crepitus in both knee and hip joints. (AR 348,

5  350.)

6        Dr. Sunio assessed osteoarthritis, mostly involving the lumbar spine and hip and knee joints,

7  history of osteoporosis, history of rickets, chronic smoker, hypertension, and obesity. (AR 350.) Dr.

8  Sunio's functional assessment of Plaintiff was as follows:

9        The number of hours that [Plaintiff] could be expected to stand and/or walk in an
       eight-hour workday is 4-6 hours. The limitation is due to aggravation of pain in her
10      lower back and hip and knee joints with prolonged standing and walking. The
       number of hours that [Plaintiff] could be expected to sit in an eight-hour workday is
11      4-6 hours. The limitation is due to aggravation of pain in her lower back associated
       with prolonged sitting. She presently uses a cane for balance, especially on uneven
12      terrain. The amount of weight [Plaintiff] could lift and carry frequently is 10 pounds
       and occasionally is 20 pounds. The limitation is due to aggravation of pain in her
13      lower back associated with heavy lifting. There are frequent postural limitations on
       bending, stooping, and crouching due to limited movements of her lumbar spine.
14      There are no manipulative limitations in reaching, handling, feeling, grasping, and
       fingering. There are no relevant visual, communicative, or workplace environmental
15      limitations.

16  (AR 350-51.)

17        **3.      Saman Ratnayake, M.D.**

18        On June 13, 2006, Dr. Ratnayake, Plaintiff's treating physician, opined on a questionnaire

19  that Plaintiff's medical problems precluded her since 2002 from performing any full-time work at

20  any exertional level, including the sedentary level.[3] (AR 318, 496.) Plaintiff's primary impairments

21  were impaired mobility due to rickets, lower extremity edema, degenerative joint disease,

22  degenerative disc disease, and upper and lower extremity paresthesias.[4] (AR 318, 496.)

23

24  _____

25        [3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles
       like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).

26

27        [4] Paresthesias denote abnormal touch sensations, such as burning or prickling, often in the absence of an external
       stimulus. *Dorland's Illustrated Medical Dictionary* 1404 (31st ed. 2007) [hereinafter *Dorland's*].

28                                          3

1    Dr. Ratnayake opined that, without rest or support, Plaintiff could sit an hour and stand

2  and/or walk ten minutes at one time.  (AR 318, 496.)  Plaintiff was unable to lift, push, or pull

3  greater than five pounds because of upper extremity paresthesias, and needed to elevate her legs one

4  hour per day.  (AR 318, 496.)

5    On June 8, 2007, Dr. Ratnayake noted that Plaintiff had severe degenerative disc disease of

6  the lumbar and cervical spine.  (AR 807.)  Plaintiff's "underlying disc disease of the lumbar and

7  cervical spine is a permanent condition[,] and her overall prognosis is poor.  At this point, most of

8  the management is limitation of activity and pain control."  (AR 807.)  "The expected duration of

9  the limitations is lifelong."  (AR 807.)

10  **B.      Administrative Proceedings**

11    The Commissioner denied Plaintiff's applications initially and again on reconsideration;

12  consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR

13  160-67, 181-96.)

14         **1.      March 9, 2006, Hearing**

15    On March 9, 2006, ALJ James P. Berry held a hearing where Plaintiff, Plaintiff's friend and

16  former co-worker Jeanette Harmon, and a vocational expert ("VE") testified.  (AR 59-95.)  Ms.

17  Harmon testified that she had known Plaintiff for 15 to 20 years and had worked together providing

18  day care.  (AR 91.)  Ms. Harmon would help Plaintiff on a part-time basis with her heavy cleaning.

19  (AR 91.)  Ms. Harmon also testified that Plaintiff ultimately was unable to perform her job as "it was

20  just too much for her" "because she couldn't run after the kids or be there constantly with the kids

21  like she needed to be, and to deal with them."  (AR 91.)  Ms. Harmon finally testified that  she

22  "watched [Plaintiff] for . . . 15 or 20 years now, and she just, you can almost see her getting worse

23  every day."  (AR 91.)

24         **2.      ALJ's Decision**

25    On May 17, 2006, the ALJ issued a decision finding Plaintiff not disabled from the alleged

26  onset date of disability of April 29, 2003, through the date of the decision.  (AR 44-53.)  The ALJ

27

28                                                  4

1  found that, although Plaintiff had not engaged in substantial gainful activity at any time relevant to

2  the decision and had the severe impairments of obesity, osteoporosis, and hypertension, she did not

3  have an impairment or combination of impairments that met or equaled one of the impairments listed

4  in the Code of Federal Regulations, and could perform her past relevant work as a child care

5  provider.  (AR 49-52.)

6       In so finding, the ALJ considered the opinion evidence as follows:

7       I have given some weight to the opinion of board-certified internist G. Sunio, M.D.,
        who evaluated [Plaintiff] in May 2004.  Dr. Sunio's limits were secondary to
8       [Plaintiff's] osteoarthritis affecting her lumbar spine and hip and knee joints.
        However, progress notes from Tipton Medical Center do not show any clinical
9       findings or even subjective complaints concerning the osteoarthritis.

10  (AR 51-52 (internal citation omitted).)

11       **3.    Appeals Council Remand**

12       On October 6, 2006, the Appeals Council granted Plaintiff's request for review of the ALJ's

13  decision and remanded the case to the ALJ to (1) reevaluate Dr. Sunio's report and assessment,

14  (2) evaluate Plaintiff's obesity pursuant to Social Security Ruling 02-1p, and (3) further consider

15  Plaintiff's maximum sustainable RFC and provide appropriate rationale with specific references to

16  evidence in the record in support of the assessed limitations.  (AR 215-18.)

17       **4.    Post-Remand Proceedings**

18       Upon remand from the Appeals Council, the ALJ held supplemental hearings on March 19,

19  July 23, and October 17, 2007.  (AR 96-159.)

20            **a.    March 19, 2007, Hearing**

21       At the March 2007 hearing, Plaintiff testified that she began using a wheelchair in September

22  2006 after falling down and undergoing neck surgery in August 2006.  (AR 99-100.)  Since her

23  surgery, Plaintiff could not walk and could barely stand.  (AR 100.)  Plaintiff also complained of

24  numbness in her hands and legs.  (AR 100.)

25

26

27

28                                    5

1    Plaintiff estimated that in 2003 she was able to lift between 15 and 20 pounds.  (AR 108.)

2    Her daily activities now consisted of reading or watching television and attending therapy.  (AR

3    109.)  The ALJ ultimately continued the hearing to obtain additional evidence.  (AR 118-20.)

4    **b.      July 23, 2007, Hearing**

5    At the July 2007 hearing, Plaintiff testified that she last worked in 2002 as a child care

6    provider, which, according to a VE, was semi-skilled and medium-level work.[5]  (AR 128-29.)

7    Plaintiff estimated that, as of September 2006, she could not lift more than five pounds.  (AR 135.)

8    The VE testified that a hypothetical person of Plaintiff's age, education, and work experience

9    who could (1) lift and carry 50 pounds occasionally and 25 pounds frequently, and (2) stand, walk,

10   and sit for six hours could perform Plaintiff's past work and other jobs in the national economy,

11   including as an industrial cleaner, production helper, or floor attendant.  (AR 129.)  Such a person

12   with an RFC as outlined in Dr. Ratnayake's June 2006 opinion, however, could not perform any

13   work.  (AR 131-32.)  Further, assuming that Plaintiff's testimony was credible, Plaintiff could not

14   perform any work.  (AR 136.)

15   **c.      October 17, 2007, Hearing**

16   The ALJ continued the July 2007 hearing to obtain medical expert testimony.  (AR 141.)

17   Accordingly, at the hearing on October 17, 2007, a VE and Michael Gurvey, M.D., an orthopedic

18   surgeon, testified.  (AR 139-59.)  Although Plaintiff was present at the October 2007 hearing, she

19   did not testify.  (AR 140.)

20   **i.      Medical Expert's Testimony**

21   The ALJ summarized Dr. Gurvey's testimony as follows:

22   The medical expert, Dr. Gurvey, testified that for the period between April 2003 and
     April 2006, [Plaintiff] had low back pain and obesity.  In his opinion, [Plaintiff]
23   could lift 50 pounds frequently and 25 pounds occasionally, and sit, stand or walk six
     hours per day.  Dr. Gurvey stated [Plaintiff] could occasionally crawl, but could not
24   climb ladders, ropes or scaffolds because of her obesity.  She had no pushing or
     pulling restrictions.

25

26

     ---

     [5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects
27   weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

28                                                    6

1  (AR 30, 142-55.)  Dr. Gurvey opined that Plaintiff's impairments equaled the requirements of 20

2  C.F.R. pt. 404, subpt. P, app. 1, § 1.04 since April 2006, but not between April 2003 and April 2006.

3  (AR 146.)

**ii.     Vocational Expert's Testimony**

5       A VE testified that a hypothetical person of Plaintiff's age, education, and work experience

6  could perform Plaintiff's past relevant work as a day care provider and other work in the national

7  economy (such as a bagger, hospital cleaner, and dining room attendant) if that person could (1) lift

8  and carry 50 pounds occasionally and 25 pounds frequently; (2) stand, walk, and sit for six hours;

9  and (3) occasionally crawl; but (4) not climb ropes, ladders, or scaffolds.  (AR 155-56.)

**d.     ALJ's Decision on Remand**

11      On October 22, 2007, the ALJ issued a partially favorable decision finding that Plaintiff was

12  not disabled before April 1, 2006, but became disabled on that date through the date of the decision.

13  (AR 19-32.)  Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful

14  activity since April 29, 2003, the alleged onset date of disability; (2) had an impairment or a

15  combination of impairments that is considered "severe" based on the requirements in the Code of

16  Federal Regulations; (3) did not have an impairment or combination of impairments before

17  April 1, 2006, that met or equaled one of the impairments set forth in 20 C.F.R. Part 404, Subpart

18  P, Appendix 1; and (4) was able to perform her past relevant work as a child care provider before

19  April 1, 2006, as she actually and generally performed it.  (AR 26-30.)  The ALJ found, however,

20  that, beginning on April 1, 2006, the severity of Plaintiff's impairments met the requirements of 20

21  C.F.R. pt. 404, subpt. P, app. 1, § 1.04, as Plaintiff began experiencing cervical myelopathy[6] and

22  significant weakness and numbness in her legs and arms after that date.  (AR 29, 30-32.)

---

26      [6] Myelopathy denotes any of various functional disturbances or pathological changes in the spinal cord, often referring to nonspecific lesions.  *Dorland's*, *supra*, at 1239.  Cervical myelopathy denotes compression myelopathy of the cervical spinal cord, a complication that occasionally arises from rheumatoid arthritis or osteoarthritis.  *Id.*

1    The ALJ found that, before April 1, 2006, Plaintiff had the RFC to (1) lift and carry 50

2 pounds occasionally and 25 pounds frequently; (2) sit, stand, or walk for six hours per day; and

3 (3) crawl occasionally but not climb ladders, scaffolds, or ropes.  (AR 27.)

4    In doing so, the ALJ gave "some weight to Dr. Sunio's opinion, but not controlling weight."

5 (AR 29.)  The ALJ considered Dr. Sunio's opinion as follows:

6    [Dr. Sunio] basically restricted [Plaintiff to] work at the light level of exertion.
     However, his findings upon exam were minimal and do not justify such an extreme
7    restriction.  Dr. Sunio did not have access to all of [Plaintiff's] treating records, and
     if he had, he might have noted how very little treatment [Plaintiff] had received for
8    her orthopedic problems and how few times she had complained of discomfort.  Dr.
     Sunio's restriction to light work is not justified by the objective evidence for the
9    period prior to April 2006.

10 (AR 29.)

11    The ALJ also found "the opinions of the State agency [sic] and Dr. Gurvey to be consistent

12 with the overall medical record prior to April 2006."  (AR 30.)  "The objective medical evidence was

13 minimal[,] and [Plaintiff's] reported activities of daily living show a fairly normal life.  [Plaintiff]

14 was able to care for her own personal needs, do household chores and drive."  (AR 30.)

15    The ALJ gave Dr. Ratnayake's June 2006 opinion "some weight, but not controlling weight,"

16 finding that, "[w]hile this assessment is consistent with [Plaintiff's] status as of June 2006, evidence

17 prior to April 2006 does not support such extreme limitations."  (AR 31.)  The ALJ found, however,

18 that Dr. Ratnayake's June 2007 opinion was consistent with the medical evidence.  (AR 31.)

19    As for Plaintiff's credibility, the ALJ found that Plaintiff's "medically determinable

20 impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's]

21 statements concerning the intensity, persistence and limiting effects of these symptoms are not

22 entirely credible prior to April 1, 2006."  (AR 28.)  The ALJ further found that, beginning on

23 April 1, 2006, Plaintiff's allegations regarding her symptoms and limitations were generally credible.

24 (AR 31.)

25

26

27

28    8

1    Plaintiff sought review of this decision before the Appeals Council, which denied review on

2  September 14, 2009.  (AR 7-9.)  Therefore, the ALJ's decision became the final decision of the

3  Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

4  **D.     Plaintiff's Appeal**

5    On November 18, 2009, Plaintiff filed a complaint before this Court seeking review of the

6  ALJ's decision.  Plaintiff contends that, in finding her not disabled before April 2006, the ALJ erred

7  in (1) rejecting the opinions of Drs. Ratnayake and Sunio; (2) disregarding Ms. Harmon's lay witness

8  testimony; (3) improperly rejecting the credibility of Plaintiff's allegations pertaining to the period

9  before April 1, 2006; and (4) failing to provide a complete hypothetical question to the VE.

10                              **SCOPE OF REVIEW**

11    The ALJ's decision denying benefits "will be disturbed only if that decision is not supported

12  by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

13  1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that

14  of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must

15  determine whether the Commissioner applied the proper legal standards and whether substantial

16  evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d

17  909, 911 (9th Cir. 2007).

18    "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.

19  Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such

20  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

21  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

22  U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the

23  evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may

24  not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*,

25  504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

26

27

28                                  9

**REVIEW**

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work.  *Id.* §§ 404.1520(f), 416.920(f).  If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy.  *Id.* §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

1

**DISCUSSION**

2

**A.     Lay Witness Testimony**

3       The ALJ did not mention in his October 2007 decision the testimony of Plaintiff's friend and

4   former co-worker, Ms. Harmon, presented at the March 2006 hearing.  Plaintiff contends that the

5   ALJ's silent disregard of this lay witness testimony is reversible error.  (Doc. 20 at 16.)  Defendant

6   maintains, however, that any error by the ALJ in failing to do so is harmless because this testimony

7   "was of little or no probative value to the ALJ's decision because it was so brief and so duplicative

8   of Plaintiff's own statements."  (Doc. 21 at 14.)  According to Defendant, "the ALJ gave valid

9   reasons for not fully crediting Plaintiff's testimony for the period before April 2006.  Therefore, the

10  ALJ had sufficient reasons for not fully crediting [Ms.] Harmon's testimony, as well . . . ."  (*Id.*)

11          **1.      Legal Standard**

12      Lay witness testimony regarding a claimant's symptoms "is competent evidence that an ALJ

13  must take into account," unless the ALJ "expressly determines to disregard such testimony and gives

14  reasons germane to each witness for doing so."  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001);

15  *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).  Lay witness testimony

16  cannot be disregarded without comment.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053

17  (9th Cir. 2006).  In rejecting lay witness testimony, the ALJ need not cite the specific record as long

18  as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does

19  "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's

20  decision.  *Lewis*, 236 F.3d at 512.  Germane reasons for rejecting a lay witness' testimony include

21  inconsistencies between that testimony and the claimant's presentation to treating physicians or the

22  claimant's activities, and the claimant's failure to participate in prescribed treatment.  *See Carmickle*

23  *v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Greger v. Barnhart*, 464 F.3d

24  968, 972 (9th Cir. 2006); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  The ALJ also

25  may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642

26  (9th Cir. 1982).

27

28                                              11

1    The burden is on the party attacking an agency's determination to show that prejudice

2 resulted from the error. *Shinseki v. Sanders*, 556 U.S. __, 129 S. Ct. 1696, 1705-06 (2009)*; McLeod*

3 *v. Astrue*, ___ F.3d ___, 2011 WL 347133, at *4 (9th Cir. Feb. 4, 2011).  In this regard, the failure

4 to address lay witness testimony is not harmless unless the Court "can confidently conclude that no

5 reasonable ALJ, when fully crediting the testimony, could have reached a different disability

6 determination." *Stout*, 454 F.3d at 1056.

7    **2.    Analysis**

8    As noted above, Ms. Harmon testified in March 2006 that she had known and worked with

9 Plaintiff for 15 to 20 years and observed Plaintiff's gradually deteriorating ability to perform her job

10 as a child care provider, which ultimately overwhelmed her.  (AR 91.)  Ms. Harmon's testimony

11 pertains to Plaintiff's ability to perform her past relevant work and, therefore, was relevant to the

12 ALJ's disability determination.  If Ms. Harmon's testimony is credited in its entirety, the Court

13 cannot conclude that no reasonable ALJ would have reached a different disability determination.

14 Thus, the ALJ's failure to discuss Ms. Harmon's testimony was not harmless error.  *See Stout*, 454

15 F.3d at 1054-56 (holding that the ALJ's silent disregard of lay testimony was not harmless error

16 because "the ALJ, not the district court, is required to provide specific reasons for rejecting lay

17 testimony," the court "cannot affirm the decision of an agency on a ground that the agency did not

18 invoke in making its decision," and the ALJ's error was neither irrelevant nor non-prejudicial to the

19 nondisability finding).

20    Defendant asserts, however, that, Ms. Harmon's testimony was similar to Plaintiff's

21 testimony, which the ALJ gave valid reasons for not fully crediting.  Defendant, therefore, maintains

22 that the ALJ had sufficient reasons for not fully crediting Ms. Harmon's testimony as well.  (Doc.

23 21 at 14 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).)

24 Defendant's reliance on *Valentine* is unavailing.  In *Valentine*, the testimony by the claimant's wife

25 about her husband's fatigue was similar to the claimant's own subjective complaints.  574 F.3d at

26 694.  The ALJ in *Valentine*, however,  did not disregard the testimony of the claimant's wife without

27

28                                                    12

1    comment. Rather, the ALJ expressly rejected this evidence for the same reasons the ALJ discounted

2    the claimant's allegations. *Valentine*, 574 F.3d at 694. The ALJ, therefore, provided germane

3    reasons for rejecting the testimony of the claimant's wife. *Id.*

4           In contrast, the ALJ in this case failed to address Ms. Harmon's testimony in the first

5    instance. On this basis, the Court cannot confidently conclude that no reasonable ALJ, when fully

6    crediting Ms. Harmon's testimony, could have reached a different disability determination. *See*

7    *Bruce v. Astrue*, 557 F.3d 1113, 1115-16 (9th Cir. 2009) (holding that ALJ failed to consider

8    testimony of claimant's wife in determining whether claimant's impairments impacted his ability

9    to work).

10          In sum, "the ALJ, not the district court, is required to provide specific reasons for rejecting

11   lay testimony." *Stout*, 454 F.3d at 1054. The ALJ in this case failed to provide any reasons for

12   rejecting the testimony of Ms. Harmon, Plaintiff's friend and former co-worker, and the error was

13   not harmless. Substantial evidence, therefore, does not support the Commissioner's decision that

14   Plaintiff could perform her past work as a child care provider before April 1, 2006. *See id.* at 1056-

15   57. The Court, therefore, reverses the Commissioner's decision and remands to the Commissioner

16   for further administrative proceedings consistent with this order. On remand, the ALJ shall

17   reevaluate the lay witness testimony and fully explain his conclusions.

18          Plaintiff also alleges that the ALJ erred in weighing the opinions of Drs. Ratnayake and

19   Sunio, in rejecting the credibility of Plaintiff's allegations pertaining to the period before April 2006,

20   and in posing hypothetical questions to VE that did not accurately reflect Plaintiff's limitations. The

21   Court need not consider these arguments in light of the need for reversal on other grounds. *See*

22   *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues

23   raised by appellant because they may be affected by the ALJ's treatment of this case on remand.");

24   *Byington v. Chater*, 76 F.3d 246, 250-51 (9th Cir. 1996) ("Because we find that the district court

25   committed error and the decision of the ALJ is supported by substantial evidence, we do not consider

26   the Secretary's other arguments on appeal."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir.

27

28                                                    13

1    1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do

2    not consider the appellant's other claims.").

3    **B.      Remand Is Required**

4           "The court shall have power to enter, upon the pleadings and transcript of the record, a

5    judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

6    with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  In Social Security cases,

7    the decision to remand to the Commissioner for further proceedings or simply to award benefits is

8    within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If

9    additional proceedings can remedy defects in the original administrative proceedings, a social

10   security case should be remanded.  Where, however, a rehearing would simply delay receipt of

11   benefits, reversal [and an award of benefits] is appropriate." *Id.* (alteration in original) (internal

12   quotation marks omitted).

13          The Court has concluded that the ALJ erred in failing to give germane reasons for rejecting

14   lay witness testimony.  In these circumstances, it is appropriate to remand this matter for further

15   administrative proceedings.  "Remand for further administrative proceedings is appropriate if

16   enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir.

17   2004); *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Where there are outstanding

18   issues that must be resolved before a determination of disability can be made, and it is not clear from

19   the record that the ALJ would be required to find the claimant disabled if all the evidence were

20   properly evaluated, remand is appropriate. *Cf. Benecke*, 379 F.3d at 593; *Harman*, 211 F.3d at 1178.

21   Here, remand is appropriate because the ALJ must properly address the lay witness testimony before

22   a proper disability determination can be made. *See Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir.

23   2009).

24                                          **CONCLUSION**

25          Based on the foregoing, the Court finds that the ALJ's decision is not supported by

26   substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further

27

28                                              14

1  proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter judgment in

2  favor of Plaintiff Antoinette Adkins and against Defendant Michael J. Astrue, Commissioner of

3  Social Security.

4

5  IT IS SO ORDERED.

6  **Dated:    March 18, 2011**                        /s/ Sheila K. Oberto
                                             UNITED STATES MAGISTRATE JUDGE